MARY DAMON, Respondent, v. WILLIAM MOORE, Appellant.

(GENERAL TERM, THIRD DEPARTMENT, MARCH, 1871.)

In an action for damages for seducing a minor daughter and servant, brought by the mother, a widow, it seems the plaintiff may recover, although the seduction was accomplished by force and against the consent of the seduced. (Per POTTER, J.)

Exemplary damages are recoverable in the action.

*Hogan* v. *Cregan* (6 Rob., 131) on this point disapproved. (Per POTTER, J.)

Damon *v.* Moore.

THIS action was brought by the plaintiff, as mother, to recover damages sustained by reason of defendant's having " debauched and carnally known " her daughter and servant.

The answer denies most of the material allegations of the complaint, alleges that the daughter was not the servant of plaintiff, and that she became pregnant, if at all, by some person other than the defendant, and with the privity and consent of plaintiff.

The action was referred, and the referee reported in favor of the plaintiff, assessing her damages at $1,500.

It appeared from the evidence that the plaintiff was a widow; that in February, 1869, the defendant, a married man about forty years of age, took the plaintiff's daughter, a girl of about sixteen, into his mill in Cohoes; and while in his employ, as was testified to, the defendant had the intercourse which resulted in the birth of a child. In consequence, the mother lost her services, &c. From the judgment entered upon the report of the referee, an appeal is taken to this court.

*R. A. Parmenter*, for the appellant.

*Matthew Hale*, for the respondent.

Present—MILLER, P. J., POTTER and BALCOM, JJ.

POTTER, J. The plaintiff had a right to maintain this action by reason of her relation of mother of her minor daughter, entitled to her services and wages, the father being dead, and the daughter being the servant of and living with her mother, upon the showing a loss of service, which was done. This point is not controverted on the argument.

The several findings of fact by the referee are sustained, either upon conflicting or upon undisputed evidence ; and upon a careful examination of the case, I do not find a reason for a reversal of the judgment on the ground of its being against the weight of evidence. Nor does there appear to be any ruling of the referee, upon the admission or rejection of evidence, which is of sufficient materiality to make a cause for reversal

Two grounds for a reversal are urged upon the law of the case, viz. :

1st. That the act complained of was not seduction, because committed with force, and

2d. That exemplary damages are not allowable in such a case.

At common-law, and before the Code abolished the distinc tion between forms of action, it was settled that the form of the action for seduction was at the option of the plaintiff, and that *trespass* or *case* was equally proper. That question, especially since the Code has abolished the distinction between forms of action, it is no longer necessary to discuss. (See Code, and *Moran* v. *Dawes*, 4 Cow. R., 412, and cases cited.) In England, trespass *vi et armis* was the more common form of action. (*Chamberlin* v. *Haglewood*, 5 Mees. & Wels., 515.) In *Moran* v. *Dawes*, *supra*, the court said: "Where the seduction is accompanied with *actual violence upon the person* of the daughter, or an illegal entry upon the plaintiff's close or into his house, *trespass* would lie for the assault within the case of *Ditcham* v. *Bond* (2 M. & S., 436)." This last case holds that, in an action for seducing the daughter or adultery with the wife, the action of *trespass* would lie; and that in such actions the court had treated them as actions on the case.

I have cited these authorities because it is argued, on the part of the defendant, that the action is not *seduction* if the act was committed with *force* and against the will of the servant. The court says, in *Moran* v. *Dawes*, "neither the injury to the person of the child nor the property of the plaintiff are, in truth, ever taken into the account. They are little more than a mere fiction, adopted in order to sustain the remedy by *trespass*. The direct injury may be waived in all cases; and the declaration framed to meet the consequential injury, disregarding entirely every consideration, except the loss of service, and the more important one of seduction and disgrace." In *Bartley* v. *Richtmyer* (4 N. Y., 38, 43), an effort was made by very distinguished counsel to overturn the rule as to the extent of damages that might be recovered in such

Damon *v.* Moore.

cases, attempting to confine it to actual damages. The case was thoroughly considered, and Bronson, J., who delivered the opinion of the court, said: "Actions of this kind are founded on the relation of master and servant, and the gist of the action, whether it be in *case* or *trespass*, is the master's loss of services in consequence of the wrong done by the defendant." * * "It has been settled that the value of the services does not constitute the measure of damages, when the action is brought for loss of services, &c." In this he refers to the action brought in either form, *trespass* or *case.* In *Segar* v. *Slingerland* (2 Caines, 219), the court say: "in actions of this nature the daughter is supposed *to be violated by force*, against the will and consent of the master."

The evidence in this case, which is uncontradicted, and which the defendant cites to show that *force* was used by the defendant, is, that the daughter, on two occasions in the evening, went alone with the defendant into his mill where the intercourse occurred. She swears she did not consent; that he had connection with her against her wishes, and that she struck him and pulled his whiskers; that she resisted him all she could. This, it is claimed, is not *seduction;* that it is either an assault and battery or rape; and the action being *case,* in form, for seduction, the complaint was not sustained; or, if sustained, that only actual damages should have been allowed. To sustain this position, the case of *Cowden* v. *Wright* (24 Wend., 429) and some other cases are cited. That was an action of assault and battery brought by a father for the battery of a son, *per quod servitium amisit,* and the court charged the jury that they might take into account, on the question of damages, the feelings of the parents occasioned by the infliction on their son. The judgment was correctly set aside for this error in the charge. But that case, I think, proves too much for the defendant, for the court in the same opinion distinguish such a case from an action for the seduction of a daughter. Nelson, Ch. J., says: "It is true that in an action for the seduction of a daughter, the jury, in fixing upon the damages, may regard

the wounded feelings of the family." "That case" (seduction), he says, "has always been considered *sui generis*, and inconsistent with the fundamental principle of the action," which is either *trespass* or *case per quod*," &c., and the judge proceeds to show the reasons, and then cites as authority the case of *Edmonson* v. *Machell* (2 T. R., 4), which was an action of *trespass* for assaulting and beating the plaintiff's niece, who was her servant, *per quod*, &c. ; the jury rendered a verdict of £300, which was sustained, putting the case on the footing of the action of seduction. The case of *Whitney* v. *Hitchcock* (4 Den., 461) was also cited on the part of the defendant to the same point. That was also an action of assault and battery by the father, with a *per quod*, &c. The question was, whether anything beyond actual damages could be recovered by the father, inasmuch as the child, which was eleven years old, could also recover for the assault and battery. The court held that the father could not recover *exemplary damages*, but the court also distinguished that case from one where there had been seduction. They say "the action of seduction is *peculiar*," and would seem to form an exception to the rule that actual damages *only* can be recovered, and say that the action of seduction is based upon *special reasons* only applicable to that case.

From this review of the above cases, it is entirely clear that it is immaterial whether the form of action is *trespass* or *case*, if seduction is the nature of the action ; and a case of seduction proved under a complaint in either form would be sustained, and if needful, though I think it is not, the court after judgment would allow an amendment to conform the pleading to the case proved ; and that case also establishes that seduction may as well be accompanied with force as without. The case of *Shufelt* v. *Rowley*, reported in 4 Cow., 58, was, in one count, for making an *assault* upon the plaintiff's daughter and maltreating her, debauching her and getting her with child, with a *per quod*, &c. The court said: "This is not *technically* an action of assault and battery. The gist of the action is the loss of service." And yet the

Damon *v.* Moore.

form of that action implied *force.* The injury to the parent in these actions is the same. The disgrace and wounded feelings are the same, when accomplished by insinuating arts, wiles and strategy, and persuasion. He abuses the sim-. plicity and confidence of the victim, without force, or by art and force combined, or by force alone. I think the action can be maintained and exemplary damages recovered, whether the injury is inflicted within or without the technical meaning of what may be called *seduction.* The cases are not confined to the strict *literal* meaning of that term, as defined in the literary lexicons of the day. It lies and can be maintained for debauching and carnally knowing the daughter or servant, by means whereof the party is injured, whether committed with force or not, and the action may be, and ever has been, sustained in our courts in both forms of charge. (In Trespass, see 1 Chitty Pl., 138; 2 Chitty Pl., 375, 376; in Case, 2 Chitty Pl., 265 to 268.) It would be a monstrous doctrine, indeed, to be laid down by a court, that the wrongdoer who accomplishes his purpose with some degree of force shall escape with only the liability for *actual* damages, while he only who effects the same purpose and inflicts the same injury by persuasion and artifice is liable for *exemplary* damages. No case entitled to respect, within the limits of my research, has held this to be the law; but, on the contrary, the form of action in trespass alleging force having been so long used, it is clearly by implication otherwise.

If it be true that the legal foundation of this action (loss of service) is but a legal fiction, and that its real foundation is the disgrace of the family, then it is not true, as a legal proposition, that there is still another distinction, to wit: whether or not this disgrace was produced with or without force. The terrible wrong inflicted is no less bitter if produced by the one means than by the other. In *Badgley* v. *Decker* (44 Barb., 589), MASON, J., said: "The real gravamen of the action is the mortification and disgrace of the family and the wounded feelings of the plaintiff;" and PARKER, J., in same case, p.

Damon v. Moore.

595, held to the same in effect. And see also opinion of Denio, J., in *Lipe* v. *Eisenlerd* (32 N. Y., 236).

I am not unaware of a case in the Superior Court of New York (*Hogan* v. *Cregan*, reported in 6 Robertson, 138), cited as holding to the reverse of the propositions above laid down in one particular. I do not think the case goes to the extent claimed. If it does, then, with all respect to that able court, I do not concur in its views. The learned judge in that case would, indeed, seem to be inclined to hold that the case may be decided upon the literary definition of the word "seduce," and gives the ordinary acceptation of that word; and that in such action the servant must be "debauched by wiles and persuasions, without force." In another remark, he says: "Again, the criminal connection may have been compelled by force. To designate such an act, the law uses the term rape, not seduction." The reporter would seem by his third note or syllabus of the case to have understood the court to have held "that to constitute seduction it is necessary that the seducer employ acts to overcome the resistance of the seduced, and by wiles and persuasions, without force, debauch her." If this is intended as a legal proposition, and as a rule, without exception, it is not law, and stands in conflict with undoubted authority. Can it be that the wrong-doer can debauch the daughter or servant, and escape the severer consequence by employing some force? Suppose the case of artifice and persuasion, combined with some force, is he then to escape? The learned judge says when force is employed, the law designates the act a rape. But suppose that by reason of arts and wiles the force employed is less than that required by law to constitute the crime of rape? In such case is there no remedy for the disgrace and wounded feelings of the family which have thus been inflicted by the wrong-doer? This case stands alone, so far as these intimations are put forth as law. To that extent I think it unsound.

Assuming that the referee has correctly found the facts,

then I think his allowance of damages is legally justified, and that the judgment ought to be affirmed with costs.

MILLER and PARKER, JJ., concur in the result.

Judgment affirmed.