IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA16-620

Filed: 3 October 2017

Wake County, No. 15 CVS 4738

NORTH CAROLINA FARM BUREAU MUTUAL INSURANCE COMPANY, INC.,
Plaintiff,

v.

BEVERLY LEE PHILLIPS, VICTORIA PHILLIPS, and JOHN DOE 236,
Defendants.

Appeal by plaintiff from judgment entered 12 April 2016 by Judge G. Bryan Collins, Jr. in Superior Court, Wake County. Heard in the Court of Appeals 16 November 2016.

> *Young Moore and Henderson P.A., by Walter E. Brock, Jr. and Andrew P. Flynt, for plaintiff-appellant.*
>
> *Batch, Poore & Williams, PC, by J. Patrick Williams, for defendant-appellee Beverly Lee Phillips and Victoria Phillips.*
>
> *Jeff Anderson & Associates, P.A., by Gregg Meyers, pro hac vice, and Copeley Johnson & Groninger PLLC, by Leto Copeley, for defendant-appellee John Doe 236.*

STROUD, Judge.

Plaintiff North Carolina Farm Bureau Mutual Insurance Company, Inc. appeals a judgment ordering it to defend and indemnify defendants Beverly Lee Phillips and Victoria Phillips under the insurance policy plaintiff issued to them. We reverse and remand.

## I.    Background

The background of this case is provided by the trial court's judgment and is not at issue on appeal:

1.    Farm Bureau issued policy FO 1051463 to Beverly Lee Phillips and Vicki O. Phillips as named insureds effective January 11, 2008.  The policy has been renewed annually and amended from time to time through January 11, 2016.

. . . .

5.    Beverly Lee Phillips was charged with various sexual offenses which occurred over a period of time against the minor child of John Doe 236, referred to in this order as KGK.

6.    From those various charges, Beverly Lee Phillips agreed to plead guilty to two counts of taking indecent liberties with KGK (a violation of N.C.G.S. 14-202.1) and two counts of sexual activity by a substitute parent (a violation of N.C.G.S. 14-27.7[a]).

7.    The date of the offenses pertinent to the plea were within the 2008 policy year:  May 1, 2008 and August 7, 2008. The date on which the cause of action for John Doe 236 arose was in the 2012 policy year, when he learned of the abuse of KGK.

8.    John Doe 236 is a pseudonym for the father of KGK.  John Doe 236 filed a civil action in Chatham County Superior Court against Beverly Lee Phillips and Victoria Phillips:  <u>John Doe 236 v. Beverly Lee Phillips and Victoria Phillips</u>, 14 CVS 885, Chatham County Superior Court (the Chatham County Action). That complaint alleges one cause of action for negligence and one cause of action for loss of services.

9.      The Chatham County Action alleges in its statement of the "Nature of the Wrongdoing" that "Beverly Phillips was convicted of indecent liberty with [John Doe 236's] minor child;" that "Beverly Lee Phillips was charged and convicted for the sexual battery of the [John Doe 236's] minor child;" and that "[t]his case is about sexual battery made against [John Doe 236's] child by Beverly Lee Phillips, and the negligence of Victoria Phillips to entrust that minor with Beverly Lee Phillips."

10.      The First Cause of Action of the Chatham County Action alleges in pertinent part that "Defendant Victoria Phillips was negligent in failing to properly supervise Beverly Lee Phillips, or warn [John Doe 236] about the assailant;" that "as a result of the conduct of the Defendants, [John Doe 236's] child suffered damage, and that damage also impeded the relationship between [John Doe 236] and his child and caused independent injury to [John Doe 236]."

11.      The Second Cause of Action of the Chatham County Action alleges in pertinent part that "[a]s a direct and proximate result of the assault and battery by Beverly Lee Phillips, and the negligence of Victoria Phillips, [John Doe 236's] child was affected" and that "Defendants' actions and inactions which resulted in the damage to [John Doe 236's] child created difficulty between, parent and child, and loss of services of the child to the father."

12.      The First Cause of Action and Second Cause of Action conclude that "Defendants' conduct was willful, wanton, and committed with knowledge that it was likely to cause damage to [John Doe 236] and his minor child. Therefore, [John Doe 236] is entitled to an award of punitive damages." As noted above, the parties agree that punitive damages is not at issue under the policy, and in oral argument counsel for Farm Bureau agreed that viewing the pleading as a whole, that Victoria Phillips is entitled to this allegation being read as a recklessness standard.

13. Beverly Lee Phillips admits that the Transcript of Plea is a true and accurate copy of that plea entered in State v. Beverly Lee Phillips, 09 CRS 315, Chatham County Superior Court; that he initialed the plea arrangement in the Transcript of Plea; and that he signed the Transcript of Plea. By way of explanation, Beverly Lee Phillips asserts in his answers to interrogatories that "I entered a plea in this matter because I was facing significant time if convicted and the plea was in my best interest. However, I maintain now as I did at the time of the plea that I did not sexually assault or harm in any way KGK."

14. Victoria Phillips admits the Transcript of Plea, her husband's initials on the plea arrangement and her husband's signature on the Transcript of Plea. By way of explanation, Victoria Phillips asserts in her answers to interrogatories that "we do not believe a sexual assault occurred and my husband entered into plea because it was in his best interests at the time."

15. Due to his ex-wife abducting his child at age one, and she and her family separating her from him, John Doe 236 learned only in 2012 that his child had been sexually assaulted.

In April of 2015, plaintiff North Carolina Farm Bureau Mutual Insurance Company, Inc. ("Farm Bureau") filed a complaint for declaratory relief "declaring that the Farm Bureau policies do not apply to any claims in the Chatham County Action, and that Farm Bureau does not have a duty to defend or indemnify Beverly Lee Phillips or Victoria Phillips in the Chatham County Action[.]" The defendants answered and requested that the complaint be dismissed. On 12 April 2016, the trial court entered judgment and ordered that plaintiff "Farm Bureau has a duty to defend

and an obligation to indemnify each of Beverly Lee Phillips or Victoria O. Phillips in the Chatham County Action." Plaintiff Farm Bureau appeals.

## II.     Policy Coverage

Plaintiff Farm Bureau's brief argues several reasons why it should not have an obligation to defend in the Chatham County lawsuit, all based upon the policy language. The parties have presented arguments regarding the meanings of several defined terms and phrases under the policy and exclusions. But we will begin with plaintiff Farm Bureau's last argument first, since it addresses the first relevant definition in the policy and is dispositive. Plaintiff Farm Bureau argues that "the Chatham County claims do not seek damages for 'bodily injury' as defined by the policies." (Original in all caps.) We agree.

A.     Standard of Review

Generally,

> [t]he standard of review in declaratory judgment actions where the trial court decides questions of fact is whether the trial court's findings are supported by any competent evidence. Where the findings are supported by competent evidence, the trial court's findings of fact are conclusive on appeal. Findings of fact not challenged on appeal are binding on this Court. However, the trial court's conclusions of law are reviewable *de novo*.

*Basmas v. Wells Fargo Bank Nat.'l Ass'n*, 236 N.C. App. 508, 511, 763 S.E.2d 536, 538–39 (2014) (citations and quotation marks omitted). Because no issues are raised as to the findings of fact in the judgment on appeal, the only question before this

Court is the legal issue of whether plaintiff Farm Bureau has a contractual obligation to defend defendants Beverly and Victoria Phillips for the claims in the Chatham County lawsuit.[1]

B.      Comparison Test

> In our Supreme Court's most recent decision on the duty to defend, the Court explained that in order to answer the question whether an insurer has a duty to defend, we apply the comparison test, reading the policies and the complaint side-by-side to determine whether the events as alleged are covered or excluded. In performing this test, the facts as alleged in the complaint are to be taken as true and compared to the language of the insurance policy. If the insurance policy provides coverage for the facts as alleged, then the insurer has a duty to defend.

*Kubit v. MAG Mut. Ins. Co.*, 210 N.C. App. 273, 278, 708 S.E.2d 138, 144 (2011) (citations, quotation marks, and ellipses omitted). Our Supreme Court has also noted that the duty to defend exists unless the facts as alleged in the complaint "are not even arguably covered by the policy." *Id.* at 278, 708 S.E.2d at 144 (citation and quotation marks omitted).

> Our Supreme Court has observed that the insurer's duty to defend the insured is broader than its obligation to pay damages incurred by events covered by a particular policy. This duty to defend is ordinarily measured by the facts as alleged in the pleadings. When the pleadings state facts demonstrating that the alleged injury is covered by the policy, then the insurer has a duty to defend, whether or not the insured is ultimately liable. An insurer is excused from its duty to defend only if the facts are not even

---

[1] We take no position on the merits, if any, of the underlying Chatham County lawsuit, which is not at issue in this case.

arguably covered by the policy.

. . . .

> In addressing the duty to defend, the question is not whether some interpretation of the facts as alleged could possibly bring the injury within the coverage provided by the insurance policy; the question is, assuming the facts as alleged to be true, whether the insurance policy covers that injury. The manner in which the duty to defend is broader than the duty to indemnify is that the statements of fact upon which the duty to defend is based may not, in reality, be true. As we observed in *Waste Management*, when the pleadings state facts demonstrating that the alleged injury is covered by the policy, then the insurer has a duty to defend, whether or not the insured is ultimately liable.

Under *Harleysville*, the duty to defend is broader than the duty to indemnify only in the sense that an unsubstantiated allegation requires an insurer to defend against it so long as the allegation is of a covered injury; however, even a meritorious allegation cannot obligate an insurer to defend if the alleged injury is not within, or is excluded from, the coverage provided by the insurance policy.

> *Harleysville* does not specifically address and nothing in its language appears to revisit the following caveat to the comparison test set out in *Waste Management* imposing a duty on the insurance carrier to investigate:

> Conversely, when the pleadings allege facts indicating that the event in question is not covered, and the insurer has no knowledge that the facts are otherwise, then it is not bound to defend.

> Where the insurer knows or could reasonably ascertain facts that, if proven, would be covered by its policy, the duty to defend is not dismissed because the facts alleged in a third-party complaint appear to

be outside coverage, or within a policy exception to coverage. In this event, the insurer's refusal to defend is at his own peril: if the evidence subsequently presented at trial reveals that the events are covered, the insurer will be responsible for the cost of the defense. This is not to free the carrier from its covenant to defend, but rather to translate its obligation into one to reimburse the insured if it is later adjudged that the claim was one within the policy covenant to pay. In addition, many jurisdictions have recognized that the modern acceptance of notice pleading and of the plasticity of pleadings in general imposes upon the insurer a duty to investigate and evaluate facts expressed or implied in the third-party complaint as well as facts learned from the insured and from other sources. Even though the insurer is bound by the policy to defend groundless, false or fraudulent lawsuits filed against the insured, if the facts are not even arguably covered by the policy, then the insurer has no duty to defend.

*Id.* at 277–79, 708 S.E.2d at 144-45 (emphasis added) (citations, quotation marks, and brackets omitted). We now turn to the comparison of the complaint to the insurance policy. *See id.* Because the duty to defend may be broader than the duty to indemnify we address the duty to defend because if it fails, so too does the duty to indemnify. *See id.* at 277–79, 708 S.E.2d at 144-45.

C.    Analysis

The insurance policy contains coverage both for property and liability coverage, but no property claims are at issue here. The liability coverage includes personal

liability coverage labeled as "Coverage L" and medical payments to others labeled as "Coverage M[.]" Defendant John Doe's complaint does not seek to recover for any medical expenses incurred by KGK or himself, so the issue here arises under Coverage L, regarding personal liability:

> Coverage L – Personal Liability – We pay up to our limit, all sums for which an insured is liable by law because of **bodily injury**[2] or property damage caused by an occurrence to which this coverage applies. **We will defend a suit seeking damages if the suit resulted from bodily injury or property damage not excluded under this coverage.** We may make investigations and settle claims or suits that we decide are appropriate. We do not have to provide a defense after we have paid an amount equal to our limit as a result of a judgment or written settlement.

Bodily injury is defined by the policy as

> bodily harm to a person and includes sickness, disease or death. This also **includes required care and loss of services**.

> **Bodily injury does not mean bodily harm**, sickness, disease or death that **arises out of**:
> a. a communicable disease; or
> b. the actual, alleged or **threatened sexual molestation of a person**.

Defendant John Doe set forth two claims in his complaint. In both claims, the negligence and loss of services, defendant John Doe is not suing for injuries to KGK but for alleged injuries he sustained as a result of the crimes committed against KGK.

---

[2] All emphasis in bold to the policy language has been added by this Court throughout this opinion.

The negligence claim alleges defendant Victoria Phillips was negligent in caring for KGK because she knew or should have known of defendant Beverly Phillips's "sexual interest" in KGK and her lack of supervision allowed him to sexually abuse her. Defendant John Doe's negligence claim implicates no property damage but rather addresses the damage to "the relationship" with his daughter, and taking the allegations in his complaint as true, *id.* at 278, 708 S.E.2d at 144, it could potentially fall within the definition of a "bodily injury" claim under Coverage L within the policy.

The second claim is entitled "Loss of Services[;]" here, defendant John Doe alleges damages from "loss of services of the child to the father[.]" Defendant John Doe explains in his brief that "loss of services is an ancient Common Law cause of action . . . [u]nder [which] the overt fiction of . . . the injured child's lost 'service' is presumed." *See generally Tillotson v. Currin*, 176 N.C. 479, 480-81, 97 S.E. 395, 396 (1918) ("This is an action brought by the father to recover damages for the seduction of his daughter. . . . The right of the father to recover for debauching his daughter is based upon the loss of services growing out of the relation of master and servant, which, as said by Nash, J., in *Briggs v. Evans*, 27 N.C. 20, is a figment of the law, to open to him the door for the redress of his injury, but is, however, the substratum on which the action is built. If the daughter is under twenty-one years of age, the loss of service is presumed, and no evidence of the fact need be offered; and, if over twenty-one, the slightest service, such as handling a cup of tea, milking a cow, is sufficient

at common law to support the action; but, while the father comes into court as a master, he goes before the jury as a father, and may recover damages for his humiliation, loss of the society of his daughter and mental suffering and anguish, destruction of his household, sense of dishonor, as well as expenses incurred and for loss of services, and the jury may also award exemplary damages as a punishment." (citations and quotation marks omitted)). The claim of seduction can be maintained only by a father, since at common law, the father was master, and the daughter was the servant; it required that the father show that the defendant had sexual intercourse with his daughter, either with or without the daughter's consent. *See generally id.* We will generously assume that the claim for "loss of services" stemming from the claim of "seduction" -- which is based upon a master-servant relationship of father to daughter – still exists, *see id.*, and "loss of services" is thus also potentially a "bodily injury" under the policy definitions.

But we must continue with the remainder of the definition of "bodily injury." Defendant John Doe's claims also "arise[] out of" "the actual . . . sexual molestation of a person." No prior North Carolina case has directly addressed the meaning of the words "arising out of" in this context, perhaps because the meaning is apparent, though courts in other states have addressed similar provisions. *See, e.g., Supreme Servs. & Specialty Co. v. Sonny Greer, Inc.*, 958 So. 2d 634, 645 (La. 2007) ("The key words in this provision are 'arising out of,' which could mean 'but for' the damaged

property the resulting incident would not have occurred."). Defendant John Doe's claims are entirely based upon the sexual molestation of his daughter and would not exist "but for" the "molestation of a person[,]" his daughter. *Id.* Whatever name, title, or label defendant John Doe seeks to assign to his claims, they arise out of the sexual molestation of his daughter and are not included under the definition of a "bodily injury" as defined under the policy.

The policy provides that plaintiff Farm Bureau "will defend a suit seeking damages if the suit resulted from bodily injury or property damage not excluded under this coverage." The Chatham County suit did not result from a "bodily injury" as defined by the policy, so we need not consider potential exclusions. The claims raised by defendant John Doe did not result from "bodily injury" as defined by the policy because that definition explicitly does not include bodily harm that "arises out of" "sexual molestation[.]" Because defendant John Doe's entire action hinges on the sexual molestation of his daughter, it is not "a suit seeking damages" resulting "from bodily injury[.]" Therefore, plaintiff Farm Bureau has no duty to defend or indemnify defendants.

## III. Conclusion

We reverse the judgment of the trial court concluding there was coverage under the policy and remand for entry of a declaratory judgment that plaintiff Farm Bureau has no duty to defend or indemnify defendants Beverly and Victoria Phillips in John

Doe's Chatham County lawsuit.

REVERSED and REMANDED.

Judges BRYANT and HUNTER concur.